UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
IN CLERKS OFFICE

KEVIN NORRIS,                )        2006 MAY 24  P 1:09
                             )
        PETITIONER,          )                CIVIL ACTION
                             )        U.S. DISTRICT COURT 05-11353-MLW
                             )        DISTRICT OF MASS.
Vs.                          )
                             )
                             )
STEVEN O'BRIEN,              )
                             )
        RESPONDENT,          )

### PETITIONERS SUPPLEMENTAL MOTION IN OPPOSITION OF RESPONDENTS MOTION TO DISMISS

Now comes the Petitioner in the above-cited matter and
respectfully moves this Honorable Court pursuant to The
Federal Rules Civil Procedure, to consider the supplemental
meritorious grounds in opposition of respondents motion to
dismiss.

1) Federal Rules of Civil procedure Rule 12(b)(6) is not an
approiate motion in Habeas Corpus Proceeding. See Browder V.
Director, of Dept., of Corrections, 434 U.S. 257 (1978); Ukawabutu
V. Morton, 997 F.Supp. 605 (NJ, 1998). As such, the respondents
defense of dismissal under this rule is inappropriate.

2) The Massachusetts Appeals Court did not adequately or fairly
address or adjudicate his State or Federal Appellate claims. The
Appeals court relied solely on the Commonwealths Memorandum of
Law. See copy of Appeals court decision, attached hereto as
Exhibit 1. The practice of adopting the Commonwealths Memorandum
of law, has been scrutinized by this Court. See Restucci V.
Spencer, 249 F.Supp.2d 33 (D.Mass. 2003)("State Courts practice
of adopting, by reference, arguments from prevailing commonwealths
memorandum of law, while making Habeas corpus courts task of
applying deferential standards of review more difficult, did not
preclude proper habeas review"). See Also 28 U.S.C.A. § 2254(d)(1);

-2-

Norton V. Spencer, 256 F.Supp.2d 120 (D.Mass. 2003)(Strict
standards of review established in federal habeas statue for
state court adjudications of claims on merits did not apply on
federal habeas review of claim that was never addressed by the
state court) (same) Fortini V. Murphy, 257 F.3d 39 (1st Cir. 2001).
As such, the petitioner believes that the respondents are precluded
from opposing habeas review due to the State Court (Appeal court)
error of not addressing the issues.

3) The Petitioner further states that the respondents cannot
oppose review because the Commonwealth failed to address the
petitioners federal claims, actual innocence claim, and certain
other claims:

(A) The Petitioners Motion for new trial and Appellate briefs raised
a federal claim that his convictions were not based on acts
covered by the indictments and that the absence of a specific
unanimity instruction required reversal.

(B) The petitioners motion for new trial and Appellate brief
requested an evidentiary hearing to develop his ineffective
assistance of Counsel claim that trial counsel was ineffective
at sentencing. The Commonwealth and state Court did not address
this issue because the Commonwealth argued res judicata. Although, the
petitioner did raise a claim of ineffective assistance of claim
on direct appeal, this claim was now based on newly discovered
evidence an "Affidavit" from trial/sentencing counsel attesting to
his own ineffectiveness and other crucial issues. See Affidavit
attached hereto as Exhbit 2.

(C) The Petitioner requested that the Court grant him an evidentiary
hearing to prove his claim(s) of:

1. The state courts denial of his Motion for New trial (DNA) newly
discovered evidence, was based on incorrect facts;

-3-

2. Petitioner needed an evidentiary hearing and Re-testing to prove his claim of Ineffective assistance of appellate counsel for her failure of adequately briefing or arguing the DNA Issue and claim of testing contamination;

3. That justice and fairness required DNA re-testing and a non-secretor/secretor test;

   In further support of this claim the petitioner has attached hereto, certain pages from the Commonwealths appellate brief that indisputability proves that the Commonwealth failed to adjudicate his **Federal, Appellate counsel failures and DNA re-testing Issues.** See Exhibit 3.

4) The petitioner further believes that he's entitled to review because he properly filed a state application for collateral review (His Motions for new trial), and as such the one-year period was tolled. Pursuant to Massachusetts Rules of Criminal procedure Rule 30(B), a defendant can file a Motion for New trial based on newly discovered evidence at any time. See Commonwealth V. Grace, 397 Mass. 303, 305 (1986); Commonwealth V. Epsom, 422 Mass.1002 (1996). The Petitioners **DOCKET ENTRY SHEET** in addition states that the motion was filed as a newly discovered motion.

   WHEREFORE, the petitioner prays that this Honorable Court:

1. Deny the respondents motion to dismiss for the many reasons stated herein.

                                    Respectfully Submitted
                                    _Kevin Norris_
                                    Kevin Norris, Pro se
                                    NCCI-Gardner
Dated: May 18, 2006                 P.O.BOX 466
                                    Gardner,MA 01440

## CERTIFICATE OF SERVICE

I Hereby certify that a true copy of the Enclosed document was served upon the Respondents counsel Johnathan Ofilos, on May 18, 2006, by placing a copy in the prison mail box and forwarding via first class mail.

_Kevin Morris_
Kevin Norris

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

03-P-281

COMMONWEALTH

vs.

KEVIN NORRIS.

MEMORANDUM AND ORDER PURSUANT TO RULE 1:28

On July 17, 1992, a Superior Court jury convicted the
defendant of aggravated rape, assault and battery by means of a
dangerous weapon, and several other charges, all of which arose
out of events in the victim's apartment on October 29, 1991.
Three successive motions for new trial were denied, two of which
have been consolidated in this appeal.

We have reviewed the record of the trial and conclude, on
the basis of the Commonwealth's brief, at pages twenty through
forty, that the motion judge, who was not the original trial
judge, correctly denied the second and third motions for a new
trial.

> Orders denying second and
> third motions for new trial
> affirmed.
>
> By the Court (Greenberg, Brown
> & Smith, JJ.),
>
> *Ashley Ahearn*
> Clerk

Entered:  April 29, 2004.

EXHIBIT
1

# Commonwealth of Massachusetts

Appeals Court for the Commonwealth

At Boston,

In the case no. 03-P-281

COMMONWEALTH

vs.

KEVIN NORRIS

Pending in the Superior

Court for the County of Suffolk

Ordered, that the following entry be made in the docket:

> Orders denying second and
> third motions for new
> trial affirmed.

By the Court,

NOTE:
The original of the within rescript
will issue in due course, pursuant
to M.R.A.P.23
APPEALS COURT

Ashley Ahern                    Clerk

Date    April 29, 2004

only one indictment for aggravated rape, it [was] impossible to tell whether the jury's verdict of guilty was based on the same act of penetration as the grand jury's indictment." Crowder, 49 Mass. App. Ct. at 721.

This Court distinguished Barbosa, which involved two distinct drug deals involving different people separated by time. Id. In Crowder, as here, the many penetrations took place during one course of conduct. This Court held, "it is well established that a single indictment for rape is proper where the alleged multiple acts of penetration are part of a continuing criminal episode." Id. citing Commonwealth v. Keevan, 400 Mass. 557, 565-566 (1987) (where the victim testified to multiple acts of penetration by the defendant but there was only a single indictment for rape, the Commonwealth was not required to elect which of the alleged acts of sexual intercourse it relied upon to prove the offense of rape); and Commonwealth v. Vega, 36 Mass. App. Ct. 635, 641 (1994) (multiple sexual attacks on victim during a single criminal episode warranted but did not require separate indictments). Here, as in Crowder, "there is

no risk that the defendant was convicted of a crime for which he was not indicted." Id. at 722.[6]

The defendant also complains, far too late, that the judge did not give a specific unanimity instruction (D.B. 23-30). The defendant, however, did not request the instruction (D.B. 28). He also ignores another case from this Court, precisely on point, that defeats his claim. Where the jury hears about multiple penetrations in one course of conduct, "[t]he general rule is that 'no substantial risk of a miscarriage of justice exists where 'the evidence satisfies each element of the statute and is sufficient to defeat a motion for a required finding of not guilty.'" Commonwealth v. Black, 50 Mass. App. Ct. 477, 478 (2000), quoting Commonwealth v. Grandison, 432 Mass. 270, 286-287 (2000), quoting Commonwealth v. Keevan, 400 Mass. 557, 567 (1987).[7]

---

6 In an earlier motion for a new trial, the defendant claimed that he was the victim of duplicative convictions; now he seems to be complaining that he was not indicted and convicted of enough counts of rape (R.A. 21).

7 The defendant does acknowledge that "several cases have indicated that a prima facie case essentially may preclude a substantial risk of a miscarriage of justice with regard to specific unanimity issues, see, e.g., Commonwealth v. Keevan, 400 Mass. 557, 567

27

"[N]o risk of a miscarriage of justice will be found if the several acts of rape (i.e., the multiple penetrations) transpire in the context of a single criminal episode." Black, 50 Mass. App. Ct. at 478, citing Crowder, 49 Mass. App. Ct. at 721-722, and Commonwealth v. Thatch, 39 Mass. App. Ct. 904, 905, (1995) (where multiple acts of penetration occur, the "spatial and temporal separations between acts are short, that is, where the facts show a continuing course of conduct, rather than a succession of clearly detached incidents, [and] [n]othing in the record indicate[d] that the victim consented to any one of the acts," no specific unanimity instruction required).

The elements of rape are that the "defendant committed (1) sexual intercourse [penetration] (2) by force or threat of force and against the will of the victim." Commonwealth v. Lopez, 433 Mass. 722, 726 (1987) [and others]" and then essentially asks this Court to overrule the Supreme Judicial Court. Commonwealth v. Black, 50 Mass. App. Ct. 477, 478 (2000) discusses precisely the issue at bar: testimony about more penetrations than rape indictments, and no request for a specific unanimity instruction. Whether this Court looks to its own recent decisions or those of the Supreme Judicial Court, the defendant's claim fails.

28

(2001), citing Commonwealth v. Sherry, 386 Mass. 682, 687 (1982). The defendant concedes that the Commonwealth offered sufficient evidence to prove beyond a reasonable doubt that he committed eight acts of rape (five vaginal and three oral) (D.B. 14-15).[8] Even had this issue not been waived, it would fail.

B. **As this Court has already ruled on the defendant's claim that trial counsel was ineffective for failing to present mitigating factors at sentencing, it need not do so again.**

The defendant claims that trial counsel was ineffective for failing to "mention Mr. Norris's troubled childhood, his unemployment history, his mother's recent passing, and [because] he did not call any witnesses on Mr. Norris's behalf" (D.B. 31). He raised this issue on direct appeal (C.A. 1-3), and this Court need not consider it again. Balliro, 437 Mass. at 171. On direct appeal, the defendant

[8] The defendant incorrectly describes as one count of rape his penetration of the victim while he forced her to lay on top of him facing away from him, his separate act of forcing her to "get on all fours and hold [her]self, [meaning her vagina] open to him" while he talked about anally raping her, after which "[h]e turned [her] over and he mounted [her] from above," and then ejaculated on her stomach (D.B. 15; II:75-78). After the victim begged him not to anally rape her, he again repositioned her and penetrated her vaginally.

claimed, "Counsel's failure to articulate any mitigating factors at sentencing amounted to ineffective assistance of counsel" (C.A. 1-3). This Court held,

> [t]he several respects in which the defendant's trial counsel is said to have been ineffective are dealt with correctly in the Commonwealth's brief and are without merit. Indeed, our own reading of the transcript convinces us that the defendant's trial counsel, far from being deficient, exhibited the highest degree of professional skill in imparting some degree of plausibility to a most difficult defense (C.A. 5, see C.A. 6).

The defendant also claims that

> resentencing is required where the Commonwealth provided the trial court during the sentencing hearing misleading and inaccurate information concerning a larceny case out of Roxbury District Court in which [the defendant] received a continued without a finding. The prosecutor informed the trial court that the reason [the defendant] was apprehended in that case was because he used a set of the victim's keys at a later time to reenter the apartment in order to effect a breaking and entering. This statement is false and misleading because [the defendant] was never arrested for that case; rather, he turned himself in (D.B. 31).

Although the defendant does not cite to any support for this claim (D.B. 31), his affidavit filed with his third motion for a new trial seems to discuss the same

29

claim (R.A. 65). The prosecutor told the trial judge that the defendant had "received a continued without a finding" in the only case that she discussed regarding sentencing aside from that at bar, and that there were similarities between that case and the one for which he had just been convicted. It was entirely proper for the judge to consider these other acts that the defendant had committed, in considering his amenability for rehabilitation. *Commonwealth v. Goodwin*, 414 Mass. 88, 89-90, 92-93 (1993) (judge did not act improperly in considering one un-tried, and four un-charged allegations of sexual misconduct against child victims in case in which defendant pled guilty to kidnapping and three counts of rape of a child). See *Commonwealth v. Franks*, 372 Mass. 866, 867 (1977) (no error for judge to take into account prior conviction for rape of a female child and seven untried indictments for sex-related offenses so long as he was not imposing punishment for those charges); *Commonwealth v. Coull*, 20 Mass. App. Ct. 955, 958, rev. denied, 396 Mass. 1101 (1985) (no impropriety in the judge's consideration of defendant's previous sexual abuse charge that had been continued without a

30

finding and subsequently dismissed in assessing the defendant's character and propensity for rehabilitation).

Nor is there anything in the judge's lengthy statement describing his reasons for sentencing the defendant as he did that suggests that the judge considered any improper factors (V:25-27). Rather, he specifically focused on the nature of the crime, which he described as "some very, very brutal criminal conduct" (V:25). Even if the defendant had not waived this claim, it would still have no merit.

**C. The Defendant's Claim That Newly Discovered Evidence Exculpates Him Fails Because The Evidence Is Far More Inculpatory Than Exculpatory, And Because The Jury Heard Substantially The Same Evidence At Trial.**

Finally, the defendant claims that newly discovered evidence merits him a new trial, or at least an evidentiary hearing (D.B. 32-36). Judge Spurlock properly denied the motion raised on these grounds.

"A defendant seeking a new trial on [the] ground [of newly discovered evidence] must establish both that the evidence is newly discovered and that it casts real doubt on the justice of the conviction."

*Commonwealth v. LeFave*, 430 Mass. 169, 176 (1999), citing *Commonwealth v. Grace*, 397 Mass. 303, 305 (1986). "Newly discovered evidence is evidence that was unavailable at the time of trial and could not have been discovered with reasonable diligence." *LeFave*, 430 Mass. at 176, citing *Commonwealth v. Moore*, 408 Mass. 117, 126 (1990). The evidence that the defendant describes as newly discovered evidence not only does not cast real doubt on the conviction, it is far more inculpatory than exculpatory. Additionally, it is consistent with the evidence admitted at trial.

Specifically, the defendant claimed that he should have a new trial because the DNA results he obtained in September 2000[9] are newly discovered evidence. After testing materials from this case, the DNA laboratory Cellmark reported as follows:

Condom B (non-sperm fraction):

The data indicate that DNA from more than one individual may have been obtained from the non-sperm fraction of the condom B. The DNA obtained from this sample contains DNA from a male. The primary DNA profile from

_____
9 These results were not shared with the Commonwealth until August, 2002.

this sample matches the DNA profile from the tube of blood labeled Kevin Norris.

. . . . [10]

Condom B (sperm fraction):
The DNA obtained from the sperm fraction of the condom B is from a male. The DNA profile from this sample matches the DNA profile from the tube of blood labeled Kevin Norris.

Towel stain (non-sperm fraction):
The DNA obtained from the non-sperm fraction of the towel stain is from a female. Kevin Norris is excluded as the source of the DNA from this sample.

Towel stain (non-sperm fraction):
The DNA obtained from the sperm fraction of the towel stain is from a male. Kevin Norris is excluded as the source of the DNA from this sample (R.A. 38-39).

The defendant's DNA was found in both the sperm and non-sperm fraction of the substance in the condom (R.A. 38-39). The victim testified that the rapist used two condoms and left them in her apartment, and Hayes testified that one contained sperm (II:71, III:55). The defendant tried to explain away the extraordinarily inculpatory nature of this evidence in

10 Cellmark included information showing that among African Americans, the frequency of this DNA profile in the population is 1 in 560 billion unrelated individuals (R.A. 39). The chart showing the frequency of this profile for Caucasians and Hispanics is in the report (R.A. 39). The defendant is African-American.

33

his motion below by saying because "data from more than one individual may have been obtained from the non-sperm fraction of the condom," and that the source of the DNA that was not the defendant's was from a female, that "[t]his would indicate that the condom whose DNA was either contaminated in handling or the female whose DNA was obtained from the towel stain on the sample may have placed the condom on the male, in essence, showing either tainted evidence or evidence that would lead a jury to believe consent" (R.A. 26). The victim testified at trial that she asked the defendant to use a condom, and he replied that "he didn't want to catch any of [her] diseases, anyway" (III:65). He then put his lips on the victim's vagina and penetrated her, and then, forcing her to lie on her back and placing his knees on her shoulders, penetrated her mouth with his penis (III:66-67). After that, the victim asked the defendant about a condom again, and "he gave [her] one and told [her] to put it on him" (III:68-69). She was unable to do so and so the defendant took the condom from her and placed it on his penis (III:69). The defendant's claim now that DNA found on the condom that came from

34

35

a female suggests consent ignores the evidence that the jury heard. Evidence from a female donor is absolutely consistent with the victim's trial testimony that the defendant directed her to put the condom on him, testified to at a time when there was no evidence of any female cells on the condom.

The defendant's second suggested explanation for DNA from a female donor, and the explanation he stresses in this appeal (D.B. 34), possible contamination, helps him no more. Sperm was found from one male, and that male's DNA profile matches the defendant's. He offers no evidence of contamination and no scientific explanation suggesting that even if the sample had been contaminated it could have affected the accuracy of the sperm profile. The testing that the defendant claims he long sought has conclusively demonstrated that he was the person who raped the victim and robbed her and her friend.[11] This would have been devastating evidence before the jury.[12]

[11] The DNA evidence is also consistent with the defendant's confession, with his fingerprint on the victim's photograph, with his having Guy's keys, and with Guy's identification.

[12] The jury heard that the substance in the condom came from a non-secretor, that the defendant was a non-

36

The defendant also argues that the test result not showing the defendant's DNA on the towel, which the victim testified the rapist used to wipe his ejaculate off her stomach, "proves that the [victim] was lying [about the towel and] casts real doubt on her credibility and all of her other allegations" (D.B. 32-33). Again, he ignores the evidence admitted at trial that the testing available at the time demonstrated that there was sperm on the towel, and there was evidence that someone who was a secretor, and therefore could not have been the defendant, left blood group types on the same spot on the towel as the spot where the sperm was found (III:53-59). Boston Police Department Criminalist Donald Hayes testified that the towel was "well used" with several stains of different colors (III:53). He found semen in one of the stains, and also found at that stain "A" and "H" blood group substances (III:53). Because the defendant was a non-secretor, the blood group

secretor, and that about 20% of the population are non-secretors (III:50). With the DNA test results, the jury would have heard that one in 560 billion unrelated African Americans have the DNA profile of the person who left sperm and non-sperm in the condom, and that it matched the defendant's profile (R.A. 39).

substances could not have come from him (III:58-59).
Hayes could not say whether the blood group substances
came from the same person that the semen came from, as
the blood group substances could have come from sweat
or saliva (III:59). The prosecutor argued that the
semen could have come from the defendant and the blood
group substances from someone else (IV:33). Defense
counsel argued to the jury,

> The criminologist testified about that
> towel. He testified about the blood group
> substances found on that towel and said that
> those substances could not come, could not
> come from Kevin Norris, that he was tested
> and that if it had been an "A" group person,
> it would have shown up. That doesn't
> necessarily mean Mr. Norris. After all, the
> criminologist told us that 40 percent of the
> population is "Type A." But the
> criminologist told us that it was not from
> Mr. Norris (IV:13).

Thus, it was presented to the jury that there were
semen stains on the towel, that there were blood group
substances at the same location of the towel that
could not have come from the defendant, and that there
were many stains on the towel. Defense counsel argued
that the jurors should conclude that the semen stain
was not from the defendant. The victim also testified
that she was sexually active, and that her boyfriend

37

practically lived with her (II:135).[13] Given the
evidence that was before the jury and the evidence
that the defendant's sperm and non-sperm fraction were
found in the condom that the rapist left behind,
combined with all of the other evidence that the jury
heard, including the defendant's confession, there is
no chance that the jury's verdict would have differed
if it had known that the sperm on the towel definitely
did not come from the defendant.

The proffered DNA test results "would have simply
tended to support the opinion evidence, available [and
admitted] at the time of the defendant's trial,"
LeFave, 430 Mass. at 181, that the defendant was not
the source of the tested semen stain, or at least not
the source of the blood group substances at the same
site as the semen stain on the towel. Thus, the
proffered DNA evidence is not new.

The defendant claims that "the prosecutor stated
(we now know falsely) that [the defendant] had

[13] On cross-examination, defense counsel asked the
victim whether she wore a naval ring, and whether she
had had trouble with it during sex. She testified, "I
was having sex, and the naval ring came out, and
pushed inside my cervix. . . . It is a sex that I am
describing with my boyfriend Vance, who was basically
living with me at the time (II:135).

38

39

ejaculated on the towel two times [and that t]hose statements substantially bolstered the credibility of the complainant" (D.B. 33). What the prosecutor argued was,

. . . I think it's pretty clear to you from what the criminalist said that there were a lot of stains on that towel. It was quite soiled. There was a seminal stain there, but he couldn't say whether that blood group substance – and by the way, there was no blood on that towel – whether that blood group substance came from the seminal stain or some other stain. So that seminal stain may have come from Kevin Norris, and that blood group substance could be the sweat of [the victim's boyfriend or other friend] or anybody else that wiped themselves off with that towel.

So, is that in any way inconsistent? No. He wiped himself off with that towel, and then allowed [the victim] to put a blanket around herself (IV:33).

Later, she argued,

He forced her to take her clothes off, and he penetrated her again vaginally. He ejaculated on her stomach and, again, he wiped it off with a towel (IV:36).

The prosecutor argued from the evidence that was available at the time of trial that the victim testified that the defendant had twice wiped himself off on the towel (which was what the victim testified), and that the semen may have come from the defendant, while DNA tests from three years ago show

40

that the sperm on the portion of the towel tested was not from the defendant. The argument was not improper, and while it would be different if made with the DNA test results in evidence, the biggest difference would be emphasis on the inculpatory finding of the defendant's sperm and non-sperm fractions in the condom.[14] The DNA hurts the defendant's claims of innocence to a much greater degree than it helps them, and simply confirms what this Court has held in the defendant's past two appeals: the case against the defendant was very strong, and his trial was fair (C.A. 4-5, 7-8).

---

[14] It bears mention that Cellmark's report showing that the defendant's sperm was found in the condom but was not found on the towel is dated September 11, 2000, very nearly two years before the filing of the motion for a new trial raising this claim.

41

## CONCLUSION

For the reasons stated above, this Court should affirm the Superior Court's denial of the defendant's second and third motions for a new trial.

Respectfully Submitted
For the Commonwealth,

DANIEL F. CONLEY
DISTRICT ATTORNEY

By: _Amanda Lovell_
Amanda Lovell
Assistant District Attorney
BBO# 637631
One Bulfinch Place
Boston, MA  02114
(617) 619-4074

November 2003

42

## ADDENDUM

| 01/26/1999 | 45 | Deft files pro se: Motion for scientific testing of certain physical |
| 01/26/1999 | 45 | evidence with affidavits in support of said motion. (Donovan, RAJ |
| 01/26/1999 | 45 | notified w/copy) Irwin, J. was original justice |
| 02/23/1999 |  | Paper No. 45 referred to Committee for Public Counsel per Donovan, |
| 02/23/1999 | . | RAJ. (Defendant and Julie Boyden, CPCS notified with copy of |
| 02/23/1999 |  | endorsement) |
| 05/21/1999 | 46 | Deft files: Pro-Se motion for free transcripts affidavit is support |
| 05/21/1999 | 46 | of. (Donovan, RAJ. notified w/copy). |
| 06/02/1999 |  | After due consideration by the Court, paper #46 (motion for free |
| 06/02/1999 | . | transcripts) denied. |
| 12/01/1999 | 47 | Rescript received from Appeals Court; "Orders Denying New Trial |
| 12/01/1999 | 47 | Motion and Motion for Reconsideration Affirmed", Filed. |
| 05/02/2000 | 48 | Deft files motion to test and inspect physical evidence for the |
| 05/02/2000 | 48 | purpose of DNA testing. (Spurlock, RAJ and R. Martin, DA notified |
| 05/02/2000 | 48 | w/copy) |
| 05/02/2000 |  | Appearance of Deft's Atty: David L Kelston, filed. |
| 05/04/2000 | 49 | Deft files motion for expenses. (Irwin, J original Justice - |
| 05/04/2000 | 49 | Spurlock, RAJ notified w/copy) |
| 06/28/2000 |  | Brought into Court |
| 06/28/2000 |  | Motion (P#48) allowed. |
| 06/28/2000 |  | Motion (P#49) allowed (Charles T. Spurlock, R. A. J.) - T. Lyons, ADA |
| 06/28/2000 |  | - M. McDonald, Court Reporter - N. Rosmarin, Atty. |
| 08/03/2000 |  | Appearance of Commonwealth's Atty: Tracy Lee Lyons, filed. |
| 08/03/2000 | 50 | Joint motion for additional expenses, filed. |
| 08/03/2000 |  | Motion (P#50) allowed (Charles T. Spurlock, RAJ) (D. Kelston, |
| 08/03/2000 |  | Attorney and T. Lyons, ADA notified) |
| 01/24/2001 | 51 | Withdrawal of appearance filed by David L Kelston. |
| 08/26/2002 | 52 | Deft files motion for post conviction relief (newly discovered |
| 08/26/2002 | 52 | evidence) with affidavit |
| 08/26/2002 | 53 | Deft files motin to inspect and examine tangible evidence with |
| 08/26/2002 | 53 | affidavit (Spurlock, RAJ and T. Lyons, ADA notified with copy) |
| 09/06/2002 |  | Court orders the Commonwealth to file a memorandum in opposition to |
| 09/06/2002 |  | defendant's Motions Paper Nos. 52(motion for post conviction relief |
| 09/06/2002 |  | (newly discovered evidence) with affidavit and Paper No. 53(motion to |
| 09/06/2002 |  | inspect and examine tangible evidence with affidavit) by 11/12/02. |
| 09/06/2002 |  | Spurlock, RAJ (T. Lyons, ADA and S. Bloomenthal, Atty notified 6/9/02) |
| 09/12/2002 | 54 | Commonwealth files notice of appearance and statement of opposition |
| 09/12/2002 | 54 | to defendant's motion for new trial. (Spurlock, RAJ and Bloomental, |
| 09/12/2002 | 54 | Atty. notified with copies and docket sheets) |
| 11/12/2002 | 55 | Commonwealth files motion to enlarge time for filing written |
| 11/12/2002 | 55 | memroandum of law in opposition to defendant's motion fo rnew trial |