UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

KEVIN NORRIS         )
    petitioner,  )
                     )
V.                   )
                     )   C.A. No.05-11353-MLW
STEVEN O'BRIEN       )
    respondent,  )

FILED
IN CLERKS OFFICE

2007 FEB -5  P 2: 55

DISTRICT COURT
DISTRICT OF MASS.

PETITIONERS AMENDED APPLICATION FOR
CERTIFICATE OF APPEALABILITY

    Pursuant to 28 U.S.C. § 2253, F.R.A.P. 22(b) and Loc.R. 22.1, petitioner Kevin Norris, hereby moves for a certificate of Appealability with respect to certain issues raised in his petition as follows:

1. Whether petitioner has shown "good cause" for his procedural default (Not filing his AEDPA petition within the 1 year statue of limitation).

2. Whether petitioners deadline for filing his AEDPA petition was tolled during the time that he was attempting through use of state court procedures to exhaust state court remedies with regard to a particular post-conviction application, under section § 2244(d)(2).

3. Whether under the "miscarriage of Justice" or "reasonable Doubt" and "Actual innocence" **exception** petitioner is entitled to review of his DNA re-testing issue and ineffective assistance of counsel claim; additionally, whether under the newly discovered evidence clause, petitioner warrants de novo review.

4. Whether dismissal of petitioners petition pursuant to rule 12(b)(6), was proper.

5. (a) whether petitioner is entitled to de novo review where his claims were not adjudicated on the merits in the state court proceedings; and, (b) Whether petitioner is entitled to de novo review, where his federal claims before the state court were not addressed.

6. Did the commonwealth violate petitioners due process rights by not allowing him an evidentiary hearing to develop his DNA and Ineffective assistance of counsel claims.

7. Did his trial counsel violate petitioners sixth amendment right to adequate and effective counsel at sentencing.

8. Whether the DNA testing results Raise reasonable doubt about petitioners guilt, and can re-testing prove actual innocence.

9. Did the Commonwealth violate petitioners due process rights by presenting criminal acts at trial, that were not covered by the grand jury indictments, and whether the jury unanimously agreed to specific acts of criminal misconduct.

   In further support of this application petitioner has attached a copy of his affidavit from trial counsel, attesting to his failures at sentencing, (Exhibit A), the DNA testing results, (Exhibit B), and an affidavit from a forensic DNA expert, (Exhibit C). Petitioner believes that these documents support his claim that he has a Good cause or reason for his procedural default (Not putting these claims in a AEDPA petition before his deadline of July 29, 1997), these documents did not come into his possession until after the deadline, his direct appeal and first motion for New trial. Petitioner further states

that if this honorable Court does not address his issues he will be subjected to a miscarriage of justice. See <u>Burks V. Dubois</u>, 55 F.3d 712 (1995); <u>Simpson V. Matesanz</u>, 175 F.3d 200 (C.A.1 mass. 1999)(If habeas petitioner can show cause and prejudice for his procedural default, a federal court will reach the merits of his habeas case).

Additionally, petitioner filed a proper Motion for new trial (Due to newly discovered evidence), his motion was denied without a hearing, without the court addressing the claims and the Massachusetts Appeals Court also failed to review or address his claims. Under these circumstances the strict standards of the AEDPA, should not apply. The AEDPA's strict standard of review only applies to a claim that was adjudicated on the merits in state court proceedings. See 28 U.S.C. § 2254(d)(1), <u>Fortini V. Murphy</u>, 257 F.3d 39 (1st Cir. 2001); <u>Norton V. Spencer</u>, 351 F.3d 1 (1st cir. 2001) and <u>Restucci V. Spencer</u>, 249 F.Supp.2d 33 (D.Mass. 2003)(Court scrutinizing the Appeals court practice of merely incorporating the Commonweaths brief by reference as the basis of decision).

Lastly, petitioner implores this Honorable Court to review the decision in <u>Ukawabutu V. Morton</u>, 997 F.Supp. 605 (NJ, 1998) (court rules that Rule 12(b)(6) motions are not appropriate in habeas corpus proceedings).

                                                Respectfully Submitted

                                                */s/ Kevin Norris*
                                                Kevin Norris, pro se
                                                30 Administration Road
Dated: February 4, 2007                Bridgewater, MA 02324

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing application for Amended certificate of Appealablity, was placed in the prison mail box on this 4th day of February 2007, and forwarded to respondents counsels via first class mail.

                                            */s/ Kevin Norris*

"EXHIBIT"
A

**CELLMARK**
**DIAGNOSTICS**

20271 Goldenrod Lane · Germantown, Maryland 20876

Telephone: (301) 428-4980  (800) USA-LABS
Administration Fax: (301) 428-4877
Laboratory Fax: (301) 428-7946

REPORT OF LABORATORY EXAMINATION
September 11, 2000

Mr. Noah Rosmarin
Adkins, Kelston & Zavez, P.C.
Attorneys At Law
90 Canal Street, 5th Floor
Boston, MA 02114

Re: Cellmark Case No. F001374
Commonwealth v. Norris

### EXHIBITS:

Items of evidence were received for analysis on July 26, 2000. Polymerase chain reaction (PCR) testing was performed on the items listed below:

Swab in envelope labelled "...swab of interior condom B"

Cutting in envelope labelled "...Towel stain #1"

Purple top tube of blood labelled "Kevin Norris"

### RESULTS:

DNA extracts isolated from the items listed above were tested using the AmpF/STR Profiler Plus™ PCR Amplification Kit. The short tandem repeat (STR) loci tested and the types obtained for each sample are listed in the attached table.

### CONCLUSIONS:

Condom B (non-sperm fraction):

The data indicate that DNA from more than one individual may have been obtained from the non-sperm fraction of the condom B. The DNA obtained from this sample contains DNA from a male. The primary DNA profile from this sample matches the DNA profile from the tube of blood labelled Kevin Norris.

Report for Cellmark Case No. F001374
September 11, 2000
Page Two


Condom B (sperm fraction):

The DNA obtained from the sperm fraction of the condom B is from a male. The DNA profile from this sample matches the DNA profile from the tube of blood labelled Kevin Norris.

Using Recommendation 4.1 from the 1996 National Research Council report[1], the approximate frequencies in the Caucasian, African American, and Hispanic populations of the DNA profile common to the sperm fraction of the condom B, the tube of blood labelled Kevin Norris, and the primary DNA profile obtained from the non-sperm fraction of the condom B are as follows:

| POPULATION DATABASE | FREQUENCY |
| --- | --- |
| Caucasian | 1 in 2.5 trillion unrelated individuals |
| African American | 1 in 560 billion unrelated individuals |
| Hispanic | 1 in 40 trillion unrelated individuals |

Towel stain (non-sperm fraction):

The DNA obtained from the non-sperm fraction of the towel stain is from a female. Kevin Norris is excluded as the source of the DNA from this sample.

Towel stain (sperm fraction):

The DNA obtained from the sperm fraction of the towel stain is from a male. Kevin Norris is excluded as the source of the DNA from this sample.

Results for Cellmark Case No.: F001374
Date: 9/11/00
Table No.: 1
Page No.: 4

## ALLELES DETECTED - PROFILER PLUS

| Case | Sample | D3S1358 | vWA | FGA | AMEL | D8S1179 | D21S11 | D18S51 | D5S818 | D13S317 | D7S820 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| F001374 01E1 P | condom B (NSF) | 15 | 14,17,18 | 19,23 | X,Y+ | 14 | 28,29 | 15,21 | 13 (11) | 11 | 9,10 |
| F001374 01E2 P | condom B (SF) | 15 | 17,18 | 19,23 | X,Y | 14 | 28 | 15,21 | 13 | 11 | 9,10 |
| F001374 02E1 P | towel stain (NSF) | 15,16 | 14,16 | 22,24 (23) | X | 13 | 29,32.2 | 15,17 | 11 | 11 | 10,12 |
| F001374 02E2 P | towel stain (SF) | 15,17 | 15,16 | 20,24 | X,Y | 11,12 | 28,32.2 | 16,20 | 10,11 | 11,13 | 10 |
| F001374 03 P | Kevin Norris | 15 | 17,18 | 19,23 | X,Y | 14 | 28 | 15,21 | 13 | 11 | 9,10 |

NSF = non-sperm fraction
SF = sperm fraction
+ It may not be possible to determine whether DNA from a female is present when DNA from a male is detected.
The results in parentheses may be due to the presence of DNA from more than one individual or technical artifacts, and therefore were not interpreted.
The results listed in the table above do not depict intensity differences.

In addition to the profiles obtained from the items referenced in this report, weak results were observed. These results may be due to the presence of DNA from more than one individual or to technical artifacts, and therefore were not interpreted.

Report for Cellmark Case No. F001374
September 11, 2000
Page Three

**EVIDENCE DISPOSITION:**

In the absence of specific instructions, evidence will be returned to the submitting agency by Federal Express or other appropriate carrier.

_Kathryn Colombo_
Kathryn Colombo
Senior DNA Analyst

_Lewis J. Maddox_
Lewis O. Maddox, Ph.D.
Molecular Geneticist

If expert witnesses are needed for depositions or court testimony, please notify us by telephone at 301-515-6155 at least four weeks in advance.

---

[1] The National Research Council Committee on DNA Forensic Science (1996) The Evaluation of Forensic DNA Evidence. National Academy Press, Washington, D.C. (see p. 122, using $\theta = 0.03$).

"EXHIBIT"
B

## AFFIDAVIT

I, Bruce R. Taub, being duly sworn, do hereby depose and state as follows:

1) I am an attorney in good standing in the Commonwealth of Massachusetts. I represented Kevin Norris in Commonwealth v. Norris, 91SUCR25197-001-009, including trial representation, following which Mr. Norris was convicted of armed robbery and aggravated rape.

2) After reflecting on my representation of Mr. Norris at trial and sentencing, I believe Mr. Norris might have benefited from my interviewing members of his family to testify at sentencing on his behalf and from a more thorough investigation into his background for mitigating factors.

3) I believe Mr. Norris's sentence of 25-40 years to be extremely harsh and excessive, exceeding the old and new sentencing guidelines for someone with no prior convictions.

4) I believe the defendant's unwillingness to plead guilty, the race and class of the victim and of the defendant, and the presence of the victim's family in the courtroom may have fueled the trial judge's perception that a very severe sanction was warranted.

5) In my years of practicing criminal law in the Commonwealth I am unaware of a comparable sentence being given to a defendant with no prior criminal record who was a teenager at the time of his crime.

6) I believe in the interest of justice and fairness Mr. Norris sentence should be revised to reflect a sentence that is appropriate and within the sentencing guidelines.

Signed under the pains and penalties of perjury this 23rd day of October 2000.

Bruce R. Taub

R. TAUB, P.C.
RNEY AT LAW
:KPLE PLACE
UITE 402
JN, MA 02111

(7) 451-5710
(7) 451-2253
@ma.ultranet.com

"EXHIBIT"
C

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.                                       SUPERIOR COURT
                                                   NO. 91-25197

COMMONWEALTH

VS.

KEVIN NORRIS

Affidavit

1. My name is Donald E. Riley, Ph.D. I am a biochemist with over 28 years, full-time research experience in DNA-related issues. I have consulted in over 200 forensic DNA cases. My curriculum vitae is attached.

2. I was asked by attorney, Ann Goldbach to review scientific materials in the instant case. It was also requested that I conduct the review without charge, which I agreed to.

3. In the past, I have conducted similar reviews for hire by the same attorney's office.

4. In the instant case, I reviewed the Cellmark laboratory report dated September 11, 2000 as well as laboratory notes, computer-generated data, tracings (also known as electropherograms) quantity data and a variety of letters related to the case.

5. The laboratory report cites match probabilities that are so rare as to potentially imply certainty in the strength of the match.

6. It is my understanding that the defendant maintains his innocence and is requesting a retest.

7. The scientific system does have important criteria that were not met in the instant case, to the best of my knowledge. One of these is a demonstration of reproducibility.

8. A retest is likely to either demonstrate reproducibility, confirming the original Cellmark results and conclusions, or, may produce conflicting results which

would cast doubt on the original results.

9. For example, the sample identified as sperm contained in a condom could have been misidentified or inadvertently switched with another sample. If the condom sample were confused with the known standard, or vice versa, an erroneous impression of a match could have occurred. Accidental switches leading to erroneous conclusions have been known to happen multiple times within the brief history of forensic DNA testing. For this reason, the extremely rare match probabilities are misleading as to the level of certainty of the reported conclusions.

10. To the best of my knowledge, the condom sample was shipped to Cellmark in the same envelope as the defendant's known sample. It is not entirely clear how these samples were separated within the envelope. The National Research Counsel's 1996 report on forensic DNA testing recommended that particular attention should be given to keeping evidence samples separated from reference samples (p 83).

11. If evidence and the reference sample were shipped in the same envelope, this represents an unnecessary risk of cross-contamination.

12. The amount of sperm DNA found in the condom mitigates against the likelihood that such DNA represents a contaminant. The copy of the sperm fraction photograph present in the case-file appears to document many sperm. Still, the presence of evidence and known standard in the same envelope, if that occurred, is disturbing.

13. On August 22, 2000 the condom sperm DNA fraction was again brought near the defendant's known DNA sample in the same time and space, according to my reading of the Amplification record. This represents another unnecessary risk of cross-contamination or sample confusion.

14. For these reasons, most scientists I am familiar with would recommend testing of the samples in an independent laboratory. The results could then be compared with the original results to either confirm or cast doubt on the original results.

Signed under the pains and penalties of perjury:

_____   *Donald E. Riley*, Ph.D.  9-8-05
Donald E. Riley, Ph.D.